IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| RORIE JOSEPH ORGERON, SR., and | ) Case No. 05-63826 |
| ROSE HERTY ORGERON, | ) |
| | ) |
| Debtors. | ) |

ORDER SUSTAINING TRUSTEE'S OBJECTION TO
EXEMPTIONS IN INDIVIDUAL RETIREMENT ACCOUNTS AND
WITHDRAWING OBJECTION TO HOMESTEAD EXEMPTION

The Chapter 7 Trustee filed an Objection to the Debtors' claimed exemptions in their homestead and four Individual Retirement Accounts. At the hearing on the Objection, the Trustee announced that he was withdrawing his Objection as to the homestead. He maintained his Objection to exemptions claimed in the IRAs, however, on the ground that the Debtors had each deposited $3,375 into the IRAs within thirty days before filing their bankruptcy petition and that such deposits were fraudulent under § 513.430.1(10)(f) of the Missouri Statutes.[1]

According to the testimony of Debtor Rorie Orgeron, the Debtors had established four IRAs through employment or other contributions prior to 2002 or 2003. Since that time, however, the Debtors had not made any contributions to their retirement because Mr. Orgeron's current employer does not participate in an employee retirement plan and Mrs. Orgeron is unemployed.

The Debtors filed their voluntary bankruptcy petition on October 12, 2005. In their

---

[1] Mo. Rev. Stat. § 513.430.1(10)(f).

Schedules, the Debtors claimed exemptions in the four IRAs totaling $30,236.08. The Trustee objected to those exemptions to the extent that the Debtors had deposited a combined total of $6,750 into two of those IRA accounts within thirty days prior to filing their bankruptcy petition.

With regard to the recent deposits into the IRAs, Mr. Orgeron testified that, in 2003, the Debtors sold a coin collection and that they received checks totaling over $28,000 from the sale of the coins at that time. The Debtors held on to the checks, without cashing or depositing them, until the summer of 2005. After consulting with a bankruptcy attorney in the summer of 2005, they cashed the checks. The Debtors used some of those funds to pay bills and for other items, and, within thirty days before they filed their bankruptcy petition, the Debtors each deposited $3,375 from the coin sale proceeds into the existing IRAs described above. Mr. Orgeron further testified that they made the deposits because he and his wife were 52 and 53 years old and that the IRAs were their only means for retirement, other than social security benefits. He said he and his wife, in effect, viewed the uncashed checks, in part, as a form of savings for retirement. He candidly testified that the recent deposits into the IRAs were made as part of their "bankruptcy planning" after consulting with a bankruptcy attorney.

The Bankruptcy Code permits a state to opt out of the federal bankruptcy scheme.[2] The State of Missouri has exercised this option.[3] Section 513.430.1(10)(f) of the Missouri

---

[2] 11 U.S.C. § 522(b)(1).

[3] Mo. Rev. Stat. § 513.427 (2002).

Statutes provides, in pertinent part, that a debtor is permitted to claim an exemption in such person's right to receive:

> (f) Any money or assets, payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan or profit-sharing plan that is qualified under Section 401(a), 403(a), 403(b), 408, 408A or 409 of the Internal Revenue Code of 1986, as amended, except as provided in this paragraph. . . .
>
> If proceedings under Title 11 of the United States Code are commenced by or against such person, no amount of funds shall be exempt in such proceedings under any such plan, contract, or trust which is fraudulent as defined in section 456.630, RSMo, and for the period such person participated within three years prior to the commencement of such proceedings. For the purposes of this section, when the fraudulently conveyed funds are recovered and after, such funds shall be deducted and then treated as though the funds had never been contributed to the plan, contract, or trust.[4]

In other words, in a bankruptcy case, a debtor is not entitled to claim an exemption in funds deposited into an otherwise exempt retirement account if the debtor's deposit of such funds into the account is "fraudulent" as defined in § 456.630.[5] Unfortunately, § 456.630, which was part of the statutory scheme relating to trusts and estates of decedents, was repealed in 2004, but § 513.430.1(10)(f) was not correspondingly modified to reflect a change in definition of "fraudulent." Nevertheless, I find that the language contained in § 456.630 remains helpful in this context.

Subsection (10)(f) was added to the Missouri exemption statute in 1992, simultaneously with an amendment to § 456.630 (relating to trusts) which was amended to

---

[4] Mo. Rev. Stat. § 513.430.1(10)(f).

[5] Mo. Rev. Stat. § 456.630 (1992).

include the definition for "fraudulent."[6] The 1992 amendment to § 456.630 provided that, for purposes of determining whether a party transferred funds to a spendthrift trust fraudulently as to a creditor:

> "Fraud" includes the transfer of funds. . . (a) [w]ith the intent to hinder, delay, or prevent the creditor from collecting a lawful debt; (b) [w]hen such party was, or shortly before he became, insolvent; (c) [w]hen such party was not paying his debts as they became due; or (d) [w]hile any creditor lawsuit was pending against such party.[7]

Based on this language, and absent a different definition for "fraudulent" after the repeal of § 456.630, I find that, under § 513.430.1(10)(f), a debtor may not claim an exemption in otherwise exempt retirement funds if the debtor deposited those funds into the retirement account within three years prior to filing for bankruptcy protection, and the deposits were made with the intent to hinder, delay, or prevent the creditor from collecting a lawful debt; or when such party was, or shortly before he became, insolvent; or when such party was not paying his debts as they became due; or while any creditor lawsuit was pending against the debtor. To put it simply, contributions to retirement accounts made in contemplation of bankruptcy are not exempt. Such funds are to be treated "as though the funds had never been contributed to the [retirement] plan."[8]

As stated above, the Debtors in this case frankly admit that they made the disputed

---

[6] Sections 513.430.1(10)(f) and 456.630 were part of Senate Bill 447, which were enacted "for the purpose of changing the disposition of certain property in bankruptcy proceedings." *See* S.B. 447, 86th Gen. Ass., 2nd Reg. Sess. (Mo. 1992).

[7] Mo. Rev. Stat. § 456.630 (1992).

[8] Mo. Rev. Stat. § 513.430.1(10)(f).

deposits into their retirement accounts in contemplation of filing their bankruptcy case, which fits within the definition of fraud discussed above. Because the deposits were "fraudulent" under § 513.430.1(10)(f), they are not exempt.

Accordingly, the Trustee's Objection to the exemptions claimed in the IRAs is SUSTAINED to the extent of the $6,750 in deposits made in contemplation of filing their bankruptcy petition. In all other respects, however, the Debtors' claimed exemptions in their retirement funds are ALLOWED. The Trustee's Objection to the exemption claimed in the Debtor's homestead is WITHDRAWN.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: February 2, 2006